UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE FUSCO GROUP, INC. and M.A.F., INC.,

              Plaintiffs,

     -against-                             1:05-CV-1208
                                             (LEK/DRH)

LOSS CONSULTANTS INTERNATIONAL, INC.

              Defendant.

---

## MEMORANDUM-DECISION AND ORDER

Presently before the Court are motions by both plaintiffs The Fusco Group, Inc. ("Fusco Group") and M.A.F., Inc. ("MAF") (collectively "Plaintiffs") and defendant Loss Consultants International, Ltd. ("Defendant" or "Loss Consultants") seeking preliminary injunctive relief.  Pl. Motion (Dkt. No. 6), Def. Motion (Dkt. No. 17).  For the following reasons, the Court denies Plaintiffs' motion and grants Defendant's motion.

**I.    BACKGROUND**

This action involves a dispute over rights to the mark INTERCLAIM.  Defendant is a corporation organized under the laws of Delaware which provides public adjuster services. Public adjusters negotiate with insurance companies to settle property insurance claims on behalf of insured parties.  Andrew M. Fusco ("Andrew Fusco") is the President and sole owner of Loss Consultants.  Andrew Fusco Aff. (Dkt. No. 10) at ¶ 1.  Defendant began using the mark INTERCLAIM in 1993 to promote its services.  Id. at ¶ 7.  Loss Consultants applied for federal registration of the INTERCLAIM mark on November 29, 1993 and obtained a federal

registration, U.S. Registration No. 1,905,133, on July 11, 1995 for use in connection with the advertisement, sale, and performance of public adjuster services. Id. at ¶ 7 & Ex. A.

Prior to 1997, Michael Fusco and Andrew J. Fusco ("A.J. Fusco") were associated with Loss Consultants, a relationship Andrew Fusco describes as an employment relationship and that Michael and A.J. Fusco describe as joint ownership. Andrew Fusco Aff. (Dkt. No. 10) at ¶ 14; A.J. Fusco Aff. (Dkt. No. 14) at ¶ 8; Michael Fusco Aff. (Dkt. No. 14) at ¶ 6. In 1997 and 1998, A.J. Fusco formed Plaintiff Fusco Group, a corporation organized under the laws of New York with its principal place of business is Niskayuna, New York, and Michael Fusco formed Plaintiff MAF, a corporation organized under the laws of Georgia with a principal place of business in Atlanta, Georgia. A.J. Fusco Aff. (Dkt. No. 6) at ¶ 1, Michael Fusco Aff. (Dkt. No. 6) at ¶ 1. From 1997 to 2005, Plaintiffs and Defendant worked cooperatively and promoted themselves as a single organization, all using the INTERCLAIM mark. Andrew Fusco Aff. (Dkt. No. 10) at ¶¶ 18, 21; A.J. Fusco Aff. (Dkt. No. 6) at ¶ 6 & Ex. D; Anthony Fusco Aff. (Dkt. No. 11) at ¶ 7. The parties established regional markets with the Fusco Group operating in the northeast[1], MAF operating in numerous southern states[2], and Defendant operating in Florida. Andrew Fusco asserts that Plaintiffs were granted an oral, nonexclusive license to use the INTERCLAIM mark in connection with Plaintiffs' respective businesses. Andrew Fusco Aff. (Dkt. No. 10) at ¶ 16. Plaintiffs contend that Defendant simply allowed the mark to be used by them in their respective

---

[1] The Fusco Group alleges that its exclusive territory consisted of New York, Vermont, Massachusetts, New Hampshire, and Connecticut. A.J. Fusco Aff. (Dkt. No. 6) at ¶ 6.

[2] MAF alleges that it exclusive territory consisted of Georgia, North Carolina, South Carolina, Alabama, Tennessee, Louisiana, and Texas. Michael Fusco Aff. (Dkt. No. 6) at ¶ 6.

markets and exercised no control over their use of the mark.  A.J. Fusco Aff. (Dkt. No. 6) at ¶¶ 7, 9; Michael Fusco (Dkt. No. 6) at ¶¶ 6, 8.

    In 2002, Loss Consultants failed to file a Statement of Use under Section 8 of the Trademark Act and as a result, the registration was cancelled as of July 20, 2002.  Loss Consultants filed an application to re-register the mark on December 12, 2003, and obtained the federal registration, U.S. Registration No. 2,908,090, on December 7, 2004.  Andrew Fusco Aff. (Dkt. No. 10) at ¶ 12 & Ex. B.

    In 2005, various disagreements began to form between the parties.  As a result, by letter dated July 30, 2005, Defendant requested that both Plaintiffs' execute written License Agreements.  Id. at ¶ 27 & Ex. F.  Michael and A.J. Fusco, on behalf of Plaintiffs, refused to sign a written license.  By letter dated August 31, 2005, Loss Consultants demanded Plaintiffs cease and desist from any further use of the INTERCLAIM mark.  Id. at ¶ 28 & Ex. H.  Loss Consultants then sent letters to Plaintiffs purporting to terminate Plaintiffs' oral licenses to use the INTERCLAIM mark.  Id. at ¶¶ 28, 29.  Plaintiffs have continued to use the INTERCLAIM mark in territories they deem they exclusively operated in and claim to possess a superior right to Defendant.  A.J. Fusco Aff. (Dkt. No. 6) at ¶¶ 6, 8; Michael Fusco Aff. (Dkt. No. 6) at ¶¶ 5, 7.

    Loss Consultants has begun granting license to utilize the trademark INTERCLAIM to parties other than Plaintiffs.  On August 30, 2005, Loss Consultants entered into a Trademark License Agreement with Global Loss Consultants, Inc., which is owned by Anthony J. Fusco, under which, Global Loss Consultants is granted an exclusive license to use the mark INTERCLAIM in the states of North Carolina and South Carolina.  Andrew Fusco Aff. (Dkt. No.

10) at ¶ 20 & Ex. C; Anthony Fusco Decl. (Dkt. No. 20) at ¶ 13.

In their September 28, 2005 complaint, Plaintiffs seek declaratory judgment that their use of the mark does not infringe on any rights of Defendant nor constitute unfair competition. Am. Complaint (Dkt. No. 4). Plaintiffs presently seek preliminary injunctive relief to enjoin Defendant from offering or licensing to third parties the right to offer public adjuster services under the trademark INTERCLAIM in territories in which Plaintiffs have allegedly exclusively used the mark for such services. Pl. Memo. of Law (Dkt. No. 6) at 3. Defendant has filed numerous counterclaims for trademark infringement and unfair competition and seek injunctive relief to prevent Plaintiffs from utilizing the INTERCLAIM mark. Answer (Dkt. No. 27); Def. Motion for Injunctive Relief (Dkt. No. 17); Def. Memo. of Law (Dkt. No. 22).

## II.     DISCUSSION

### a.     Preliminary Injunction Standard

"The purpose of a preliminary injunction is to prevent irreparable injury and preserve a court's ability to render a meaningful decision on the merits." Tactica Int'l v. Atl. Horizon Int'l, 154 F. Supp. 2d 586, 597 (S.D.N.Y. 2001) (citing WarnerVision Entm't v. Empire of Carolina, Inc., 101 F.3d 259, 261-62 (2d Cir. 1996)). "Because it is 'one of the most drastic tools in the arsenal of judicial remedies', . . . a preliminary injunction is an extraordinary measure that should not be routinely granted." Id. at 597 (quoting Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985)).

Pursuant to 15 U.S.C. § 1116[3], this Court may grant injunctive relief. In order for the

---

[3]  15 U.S.C. § 1116 provides that this Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to

Court to grant preliminary injunctive relief, the party seeking such relief must demonstrate: 1) a likelihood of irreparable harm if the injunction is not granted; and 2) either a likelihood of success on the merits of its claims, or that there exists sufficiently serious questions going to the merits of the case to make them fair ground for litigation plus a balancing of the hardships that tips decidedly in the favor of the moving party.  See Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21, 24 (2d Cir. 2000); Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Coca-Cola v. Tropicana Products, Inc., 690 F.2d 312, 315-16 (2d Cir. 1982).  These requirements apply in a case involving trademark infringement.  Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988); Beech-Nut, Inc. v. Warner-Lambert Co., 480 F.2d 801, 803 (2d Cir. 1973).

> b.      Likelihood of Success on Merits

In order to sustain a claim for trademark infringement or unfair competition under either 15 U.S.C. § 1114 or 15 U.S.C. § 1125, the moving party must establish that: 1) the moving party has a valid mark entitled to protection under the Lanham Act; and 2) that the non-moving party's actions are likely to cause confusion in the marketplace as to the source of the services.  Virgin Enters. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003); Sports Auth. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996) (citing 15 U.S.C. §§ 1114, 1125); Council of Better Bus. Bureaus, Inc. v. Better Bus. Bureau, Inc., 99-CV-282, 1999 U.S. Dist. LEXIS 6511, at *12 (N.D.N.Y. March 30, 1999) (Munson, D.J.); Major League Baseball Properties, Inc. v. Opening Day Products, Inc., 385 F. Supp. 2d 256, 265 (S.D.N.Y. 2005).

---

prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under Section 1125(a)."

i.       Registration and Ownership of the Mark

The primary dispute in the present case concerns ownership of the mark INTERCLAIM.

Defendant contends that its use of INTERCLAIM in interstate commerce since 1994 and federal

registration of the mark in 1995 and reregistration in 2003 demonstrate its status as the owner

and senior user of the mark.  Def. Memo. of Law (Dkt. No. 22) at 8.  Plaintiffs argue that

Defendant's registration was fraudulent or alternatively, Plaintiffs are prior users as a result of

their use of the mark before Defendant's reregistration in 2003.[4]  Pl. Memo. of Law (Dkt. No. 6)

at 6-7.  Plaintiffs also assert the equitable defenses of abandonment, laches and estoppel in

opposition to Defendant's claim for preliminary relief.  Pl. Response Memo. of Law (Dkt. No.

29) at 9-10.

Federal registration is important evidence of ownership of a mark.  A trademark

registration is prima facie evidence of the mark's validity, and of the registrant's ownership and

exclusive right to use the mark in commerce in the United States.  15 U.S.C. § 1115(a); Gruner +

Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993).  However, a trademark

is not acquired by registration.  Ownership of a trademark stems from prior appropriation and

use.  See Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 118 (2d Cir. 1999); La Societe

Anonyme des Parfums le Gallon v. Jean Patou, Inc., 495 F.2d 1265, 1270 n. 5 (2d Cir. 1974)

(stating that registration "does not create the trademark right; it only recognizes the right acquired

---

[4]  While in its Amended Complaint Plaintiffs contend that Defendant's registration was
fraudulent, Plaintiffs do not raise such argument in their preliminary injunction motion and fail to
make a sufficient showing at this point in the proceedings to challenge the validity of the mark
registration.

through use.").  "Where claimants dispute the right to use a particular trademark, the general rule

is that priority of appropriation and use determines which litigant will prevail in its use."

Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F. Supp. 866, 875 (E.D.N.Y. 1978); see also

Contemporary Rest. Concepts, Ltd. v. Las Tapas-Jacksonville, Inc., 753 F. Supp. 1560, 1563

(M.D. Fla. 1991).  The Lanham Act affords nationwide protection to federally-registered marks,

and once a registration certificate issues, no person can acquire any additional rights superior to

those obtained by the federal registrant.  Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d

358, 362 (2d Cir. 1959); Burger King of Fla., Inc. v. Hoots, 403 F.2d 904, 908 (7th Cir. 1968).

        Defendant has presented evidence of its federal registration of the mark INTERCLAIM in

1995 and the re-registration in 2003.  Andrew Fusco Aff. (Dkt. No. 10) at ¶¶ 7, 12, Ex. A & B.

Defendant has also made a sufficient showing that it has used the mark INTERCLAIM in

interstate commerce since 1994, predating the existence of Plaintiffs.  This registration and use

are therefore prima facie evidence of Defendant's ownership in the mark and its exclusive right

to use the INTERCLAIM mark.  Consequently, Plaintiffs cannot predicate its alleged right to use

INTERCLAIM on priority of appropriation and use as Plaintiffs were not the first to adopt and

use it.  Therefore, if Plaintiffs possess a superior right to the mark INTERCLAIM, this right must

stem from the application of an exception to this priority rule.

        ii.        Prior Use

        "Under the established exception to the priority rule, where a junior user is the first to

adopt the disputed mark in a limited geographical area, he may thereby be entitled to exclusively

exploit the mark in that limited area."  Johanna Farms, Inc., 468 F. Supp. at 875 (citing United

Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 101 (1918); Dawn Donuts Co., 267 F.2d at

362).  "[I]n order to invoke the equitable protection afforded by this exception, a junior user must

have adopted the mark in good faith without knowledge of the originator's claim to the mark,

that is, without the intent of copying it or profiting from the efforts of the originator and,

therefore, without intending or reasonably anticipating confusion." Id. at 876.  "If it is found that

the junior user did not adopt the mark in good faith, he will not be accorded the right to exploit

the mark, even in areas previously untouched by the senior use." Johanna Farms, Inc., 468 F.

Supp. 866, 875 (E.D.N.Y. 1978) (citing United Drug Co., 248 U.S. at 101); see also Dial-A-

Mattress Operating Corp. v. Mattress Madness, 841 F. Supp. 1339, 1353-54 (E.D.N.Y. 1994)

(citing Cullman Ventures, Inc. v. Columbian Art Works,  717 F. Supp. 96, 113 (S.D.N.Y. 1989))

("In order to succeed in this defense, the claimed senior user must demonstrate (1) present rights

in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that

date, and (4) use prior to the registrant on the goods or services that are in issue.").

　　　Plaintiffs' assert that they are prior users in allegedly exclusive territorial areas and

therefore possess superior rights to Defendant over the mark INTERCLAIM in those areas.  Pl.

Memo. of Law (Dkt. No. 6) at 6-7.  Plaintiff Fusco Group alleges exclusive use of the mark

INTERCLAIM in New York, Vermont, Massachusetts, New Hampshire and Connecticut, and

Plaintiff MAF alleges exclusive use in Georgia, Alabama, Tennessee, Louisiana, Mississippi and

Tennessee.[5]  A.J. Fusco Aff. (Dkt. No. 6) at ¶ 6; Michael Fusco Aff. (Dkt. No. 6) at ¶ 5.

　　　At this stage in the proceedings, Plaintiffs have not met the requirements of showing a

---

[5]  In its moving papers, Plaintiff MAF also alleges exclusive use of the mark INTERCLAIM in North and South Carolina.  At oral argument, MAF withdrew its contention for these states.

superior right by prior use.  15 U.S.C. § 1072 provides that federal registration of a mark is

constructive notice of the registrant's claim of ownership and affords protection which is

nationwide and not confined to areas of actual use of the mark.  Dawn Donut Co., 267 F.2d at

362; First Sav. Bank, F.S.B. v. First Bank Sys., 902 F. Supp. 1366, 1374 (D. Kan. 1995)

("[F]ederal registration means that no subsequent adoption and use of the same or similar mark

for the similar goods can be justified on a claim of good faith.").  Here, Defendant registered the

mark INTERCLAIM in 1995.  After that registration, Plaintiffs were on constructive notice that

Defendant claimed ownership in the mark INTERCLAIM nationwide.  Furthermore, Plaintiffs

had actual notice of Defendant's use of the mark INTERCLAIM prior to their alleged exclusive

regional use.  A.J. Fusco Aff. (Dkt. No. 6) at ¶¶ 3, 6; Michael Fusco Aff. (Dkt. No. 6) at ¶¶ 3, 5.

As a result, Plaintiffs cannot avail themselves of the exception to the priority rule under 15

U.S.C. § 1115(b)(5) because they had both actual and constructive knowledge of Defendant's use

of the mark INTERCLAIM prior to their own regional use.  The fact that Defendant's mark was

cancelled in 2002 and registered in 2003 is of no consequence.  Defendant continued to use the

mark even though the mark had been cancelled and Plaintiffs were aware of Defendant's use.

Andrew Fusco Aff. (Dkt. No. 10) at ¶ 12.

    iii.    Abandonment and Laches

Plaintiffs also raise several equitable defenses to Defendant's motion for injunctive relief.

Plaintiffs asserts that Defendant's registration of the mark INTERCLAIM is defective and invalid

because Defendant abandoned rights to the mark as provided in 15 U.S.C. § 1115(b)(2),

acquiesced to Plaintiff's usage as provided in 15 U.S.C. § 1115(b)(3), and that Defendant is

barred under the doctrine of laches and equitable estoppel as provided in 15 U.S.C. § 1115(b)(9). Pl. Response Memo. of Law (Dkt. No. 29).

All of these contentions relate to the fact that Plaintiffs have used the INTERCLAIM mark since 1997 with Defendant's knowledge.  The parties have opposing views of the nature of Plaintiffs' use of the mark since 1997.  Defendant argues that such use by Plaintiffs was pursuant to an oral license.  While Plaintiffs dispute Defendant's assertion that their use was pursuant to an oral license, Plaintiffs argue that even if an oral license existed, Defendant abandoned the mark by not properly policing its alleged licensees.  A.J. Fusco (Dkt. No. 14) at ¶¶ 10-11; Michael Fusco Aff. (Dkt. No. 14) at ¶ 12.  Both the Fusco Group and MAF state that Defendant never monitored, reviewed, complained, edited, controlled, or exerted any influence whatsoever with regard to Plaintiffs' usage of the mark INTERCLAIM.  A.J. Fusco Supp. Aff. (Dkt. No. 14) at ¶ 12-16; Michael Fusco Supp. Aff. (Dkt. No. 14) at ¶¶ 12-16.  Defendant contends that his collaborative work with Plaintiffs allowed him to observe the quality of their services and police the alleged licenses he provided.  Andrew Fusco Aff. (Dkt. No. 10) at ¶ 18.

"Laches or acquiescence may estop the owner of a mark from asserting his or her rights in a mark under both state and federal law."  Dial-A-Mattress Operating Corp., 841 F. Supp. at 1355 (citation omitted).  In order for a party to prevail under a defense of laches, it must show: 1) that the trademark owner had knowledge of the party's use of its mark; 2) that the owner inexcusably delayed in taking action with respect thereto; 3) that the party will be prejudiced by permitting the owner inequitably to assert its right at this time; and 4) good faith conduct on the part of the using party.  See McDonald's Corp. v. Druck & Gerner, P.C., 814 F. Supp. 1127,

10

1136 (N.D.N.Y. 1993) (Scullin, D.J.); <u>Dial-A-Mattress Operating Corp.</u>, 841 F. Supp. at 1356;

<u>Eppendorf-Netheler-Hinz Gmbh v. Nat'l Sci. Supply Co.</u>, 00-9138, 2001 U.S. App. LEXIS

15979, at *6 (2d Cir. July 13, 2001) (quoting <u>Ikelionwu v. United States</u>, 150 F.3d 233, 237 (2d

Cir. 1998)); <u>Saratoga Vichy Spring Co., Inc. v. Lehman</u>, 625 F.2d 1037, 1040 (2d Cir. 1980).  A

"mere delay will not, by itself, bar a plaintiff's suit, but that there must be some element of

estoppel, such as reliance by the defendant."  <u>Saratoga Vichy Spring Co., Inc.</u>, 625 F.2d at 1040.

 "A party asserting an equitable defense such as laches must demonstrate that it comes

before the court with clean hands."  <u>Eppendorf-Netheler-Hinz GMBH</u>, 2001 U.S. App. LEXIS

15979, at *7 (citing <u>Frankel v. Central Moving & Storage Co.</u>, 1997 U.S. Dist. LEXIS 16886, at

*10 (S.D.N.Y. Oct. 29, 1997)).  It is evident that Plaintiffs do not possess "a right that is firmly

planted in good faith" as required to invoke an equitable doctrine such as laches.  <u>Adjusters Int'l</u>

<u>v. Public Adjusters Int'l</u>, 92-CV-1426, 1996 U.S. Dist. LEXIS 12604, at *55 (N.D.N.Y. Aug. 27,

1996) (D.J. Scullin) (citing <u>Johanna Farms, Inc.</u>, 468 F. Supp. at 875).  At the time Plaintiffs

began using the mark INTERCLAIM, they possessed actual knowledge of Defendant's prior use

of the mark in the business of providing public adjuster services as both A.J. Fusco and Michael

Fusco had previously been associated with Defendant.  A.J. Fusco Aff. (Dkt. No. 6) at ¶¶ 2, 3;

Michael Fusco Aff. (Dkt. No. 6) at ¶¶ 2, 3.  Additionally, Plaintiffs were on constructive notice

of Defendant's claim of ownership as a result of Defendant's registration of the mark.  <u>See</u> <u>Dawn</u>

<u>Donut Co.</u>, 267 F.2d at 362 (2d Cir. 1959) ("[T]he Lanham Act . . . provides that registration of a

trademark on the principal register is constructive notice of the registrant's claim of ownership . .

. eliminating the defense of good faith and lack of knowledge."); <u>Johanna Farms, Inc.</u>, 468 F.

11

Supp. at 875 ("[A] junior's use of a mark in the face of constructive notice of the senior's use by

virtue of the federal registration of the mark negates an inference of good faith.").  At no time

from 1997 to 2005 did Plaintiffs claim superior rights to the INTERCLAIM mark, seek to have

Defendant's federal registration of the mark cancelled, or seek to register the mark for their own

benefit after the INTERCLAIM mark was cancelled in 2002.  Therefore, Plaintiffs' continued use

of the INTERCLAIM mark with actual and constructive knowledge of Defendant's prior use was

at its own peril.  Plaintiffs took a calculated risk in utilizing a mark and "'[t]he aid of a court of

equity should not be invoked on behalf of one who lost such a gamble.'"  Johanna Farms, Inc.,

468 F. Supp. at 875 (quoting Aluminum Fabricating Co. v. Season-All Window Corp., 160 F.

Supp. 41, 46 (S.D.N.Y. 1957)).  For these reasons, at this point in the proceedings, the Court

finds that Defendants are not entitled to the benefit of a laches or acquiescence argument.

     The owner of a trademark may licensee the trademark to other parties.  "[A] license to use

a mark does not pass title to the trademark because it is a transfer of limited rights, less than the

whole interest which might have been transferred."  Acme Valve & Fittings Co. v. Wayne, 386

F. Supp. 1162, 1165 (S.D. Tex. 1974).  An agreement conferring a license to use a trademark for

an indefinite time may be oral and is terminable-at-will by the licensor.  Dial-A-Mattress

Operating Corp. v. Mattress Madness, 847 F. Supp. 18, 20 n.1 (E.D.N.Y. 1994); see also Letica

Corp. v. Sweetheart Cup Co., 805 F. Supp. 482, 487 (E.D. Mich. 1992) (citing Council of Better

Business Bureau, Inc. v. Better Business Bureau, Inc., 200 U.S.P.Q. (BNA) 282, 289 (S.D. Fla.

1978)) ("A license agreement may be oral.").  Continued use of a trademark by a licensee after

the termination of the licensing agreement constitutes trademark infringement.  See Church of

Scientology Int'l v. Elmira Mission of Church of Scientology, 794 F.2d 38, 45 (2d Cir. 1986);

Ryan v. Volpone Stamp Co., 107 F. Supp. 2d 369, 381 (S.D.N.Y. 2000); Dynamic

Microprocessor Assocs. v. EKD Computer Sales, CV 92-2787(FB), 1997 U.S. Dist. LEXIS

6337, at *53-54 (E.D.N.Y. March 18, 1997).

However, if the owner of a trademark chooses to license the use of his trademark to

others, the owner then had a "duty to exercise control and supervision over the licensee's use of

the mark." Dawn Donut Co., 267 F.2d at 367; see also Twentieth Century Fox Film Corp. v.

Marvel Enters., 277 F.3d 253, 259 (2d Cir. 2002); General Motors Corp. Gibson Chemical & Oil

Corp., 786 F.2d 105, 110 (2d Cir. 1986); Sheila's Shine Products, Inc. v. Sheila's Shine, Inc.,

486 F.2d 114, 124 (5th Cir. 1973). "Failure to exercise such control and supervision for a

significant period of time may estop the trademark owner from challenging the use of the mark

and business which the licensee has developed during the period of unsupervised use." Sheila's

Shine, 486 F.2d at 124.

Plaintiffs have failed to demonstrate Defendant's abandonment of the INTERCLAIM

mark through failure to supervise. "It is clear that the burden of proving abandonment is upon

[the party] who asserts it." R.C.W. Supervisor, Inc. v. Cuban Tobacco Co., 220 F. Supp. 453,

461 (S.D.N.Y. 1963) (citing Dawn Donut Co., 267 F.2d at 358. Plaintiffs admit at least some

collaborative working relationship with Defendant and advertised with Defendant as a single

business enterprise under the INTERCLAIM mark. A.J. Fusco Aff. (Dkt. No. 6) at ¶ 6; Michael

Fusco Aff. (Dkt. No. 6) at ¶ 6; Anthony Fusco Decl. (Dkt. No. 20) at Ex. A & B. Furthermore,

"reliance upon the integrity of a licensee is sufficient to fulfill the control requirement where a

13

history of trouble-free [service] provides the basis for such reliance." Embedded Moments, Inc. v. Int'l Silver Co., 648 F. Supp. 187, 194 (E.D.N.Y. 1986) (citations omitted).  Defendant had numerous grounds to rely on Plaintiffs.  The familial relationship of Andrew Fusco, A.J. Fusco, and Michael Fusco, the prior working relationship between A.J. Fusco, Michael Fusco, and Defendant prior to the creation of Plaintiffs' businesses, and the trouble-free collaborative effort between Plaintiffs and Defendants from 1997 to 2005 all provided Defendant a basis to rely on Plaintiffs.  Therefore, the Court finds that at this stage in the case, Plaintiffs have failed to demonstrate that Defendant abandoned the INTERCLAIM mark.

In short, Defendant has demonstrated that it has a superior right over the INTERCLAIM mark.  Defendant's federal registration and use of the mark show Defendant's ownership in the mark and its exclusive right to use the INTERCLAIM mark.  Plaintiffs have failed to demonstrate a superior right by prior use, the doctrine of laches, or abandonment.

### iv.    Likelihood of Confusion

Whether the mark is entitled to protection from another party's use turns on "whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question." Thompson Medical Co., Inc. v. Pfizer, Inc., 753 F.2d 208, 213 (2d Cir. 1985).  Likelihood of confusion is measured by the "strength of the mark, the degree of similarity between the marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." Thompson Medical Co., Inc., 753 F.2d at 213 (citing

Polaroid Corp. v. Polarad Elects. Corp., 287 F.2d 492, 495 (2d Cir. 1961)); see also Centuar

Comm. Ltd. v. A/S/M Comm., Inc., 830 F.2d 1217, 1225 (2d Cir. 1987).

"[I]f the use of the marks by the registrant and the unauthorized user are confined to two

sufficiently distinct and geographically separate markets, with no likelihood that the registrant

will expand his use into defendant's market, so that no public confusion is possible, then the

registrant is not entitled to enjoin the junior user's use of the mark." North Colorado Medical

Center, Inc. v. Adirondack Medicine, Inc., No. 90-CV-946, 1991 U.S. Dist. LEXIS 529, at *4-5

(N.D.N.Y. Jan. 4, 1991) (McAvoy, C.J.) (citing Dawn Donut Co., Inc., 267 F.2d at 364); see also

John R. Thompson Co. v. Holloway, 366 F.2d 108, 114 (5th Cir. 1966).

A review of the Polaroid factors support the conclusion that concurrent use of the

INTERCLAIM mark by Plaintiffs and Defendant would cause a likelihood of confusion.  The

mark used by both Plaintiffs and Defendant are identical and are used for the same services.  Due

to the nature of the public adjuster business, it is common for public adjusters throughout the

nation to converge on a regions that have experienced natural disasters.  Andrew Fusco Aff. (Dkt.

No. 10) at ¶ 11; Anthony Fusco Aff. (Dkt. No. 20) at ¶ 12.  Therefore, it would be expected that

Plaintiffs and Defendant would be competing in the same geographic area, such as presently in

the Gulf Coast, and customer confusion as to the source of services behind the INTERCLAIM

mark would exist.  Andrew Fusco Supp. Aff. (Dkt. No. 21) at ¶ 3.  Both parties have

demonstrated incidents of actual confusion.  Tamela Coval Decl. (Dkt. No. 15); Judd Feinman

Decl. (Dkt. No. 15).  Both Plaintiffs and Defendant affirmatively argue that concurrent use of the

mark INTERCLAIM would cause a substantial likelihood of confusion that cannot be remedied

unless the other party is enjoined.  Andrew Fusco Aff. (Dkt. No. 10) at ¶¶ 33, 34; A.J. Fusco Aff. (Dkt. No. 6) at ¶ 16; Michael Fusco Aff. (Dkt. No. 6) at ¶¶ 11, 13.  Therefore, the Court finds that concurrent use of the mark by Plaintiffs and Defendant would cause a likelihood of confusion.

As a result, the Court finds that Defendant has demonstrated, at a minimum, that there are substantial questions going to the merits of its claim and additionally, it may well have demonstrated a likelihood of success on the merits.  As for the balance of hardships, there is evidence to support Defendant's claim that it will suffer damage in the marketplace as a result of Plaintiffs' use of INTERCLAIM.  The injunctive relief sought by Defendant will not close down Plaintiffs' business.  It will merely require them to use a mark that does not cause confusion with the INTERCLAIM mark.  However, the hardship that Defendant has already sustained as a result of the intangible damages done to Defendant's mark, the symbol of the reputation and goodwill it has developed throughout the years, will continue in the future.  As such, the Court finds that the balance of hardships in this case tip in favor of Defendant.

b.      Irreparable Harm

"[I]n the context of a trademark infringement action, a number of courts have adopted the reasoning that a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation follows."  Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 938 (4th Cir. 1995); see also Church of Scientology Int'l, 794 F.2d at 42 ("[C]ases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm.").  Irreparable injury usually follows inevitably in a trademark

16

infringement case once a strong likelihood of confusion is demonstrated, since damage to reputation is difficult to prove or quantify.  Joseph Scott Co. v. Scott Swimming Pools, Inc., 764 F.2d 62, 66 (2d Cir. 1985).  Both Plaintiffs and Defendants are presently using the identical mark INTERCLAIM in competition with each other in the same geographic areas, leading to consumer confusion as to whom is offering services under the mark.  The damage to Defendant will not only be financial, but will damage and dilute Defendant's reputation and position in the marketplace for public adjuster services.  Therefore, the Court finds that Plaintiffs' continued use of the mark INTERCLAIM constitutes an irreparable harm.

      c.     Defendant Is Entitled to Preliminary Injunction Relief

Defendant has satisfied its burden to show a likelihood of success on the merits or sufficiently serious questions going to the merits plus a balancing of the hardships and a likelihood of irreparable harm if the injunction is not granted.  Therefore, the Court grants Defendant's motion for preliminary injunction relief.  The scope of an injunction to be issued in a case such as this lies within the discretion of the Court, and should be granted only on such terms as are reasonably and equitable to all concerned.  See 15 U.S.C. § 1116.  Accordingly, this Court orders that Plaintiffs, their officers, agents, servants, and employees, and all persons in concert or participation with them are preliminarily enjoined from making use of Defendant's registered mark, INTERCLAIM, and selling or marketing services in any way that tends to deceive, mislead, or confuse the public into believing that the Plaintiffs' services are in any way sanctioned by or affiliated with Defendant.

### III.   CONCLUSION

Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion for Injunctive Relief (Dkt. No. 6) is **DENIED** and

Defendant's Motion for Injunctive Relief (Dkt. No. 17)[6] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs, their officers, agents, servants, and employees, and all

persons in concert or participation with them are **PRELIMINARILY ENJOINED** from making

use of Defendant's registered mark, INTERCLAIM, and selling or marketing services in any way

that tends to deceive, mislead, or confuse the public into believing that the Plaintiffs' services are

in any way sanctioned by or affiliated with Defendant; and it is further

**ORDERED** that the Clerk of the Court shall serve copies of this order by regular mail

upon the parties to this action.

**IT IS SO ORDERED.**

DATED:          September 29, 2006
                     Albany, New York


_____
Lawrence E. Kahn
U.S. District Judge

---

[6] Defendant's Motion for Injunctive Relief (Dkt. No. 17) was also docketed as Docket Number 25.  The Court terminates Docket Number 25 as duplicative.